302 Ga. 327
FINAL COPY

S17A1127. CANNON v. THE STATE.

BENHAM Justice.

Appellant Juan Antonio Cannon stabbed the victim Terrence Wiggins in the neck because appellant believed Wiggins owed him money.[1] The record shows the stabbing took place in a DeKalb County restaurant. Anthony Daniels, who was closing up the restaurant, witnessed the stabbing. Shaquanna Fields, who was sitting inside the restaurant, was also alleged to have witnessed the events of that night. Immediately after being stabbed, the victim ran away from appellant and ran toward a police officer who was conducting a traffic stop across the street from the restaurant. According to the officer, Wiggins was bleeding, grasping at his shirt, and uttering the words "He stabbed me," and "I'm dying," before finally collapsing near the

---

[1] The crimes occurred on July 15, 2012. On October 18, 2012, a DeKalb County grand jury indicted appellant on charges of malice murder, felony murder, and aggravated assault. From June 16-19, 2014, appellant was tried before a jury which returned verdicts of guilty on the charges of felony murder and aggravated assault. The jury acquitted appellant of malice murder. On June 20, 2014, the trial court sentenced appellant to life in prison for felony murder. The count of aggravated assault merged for sentencing purposes. Appellant moved for a new trial on July 16, 2014, and amended the motion for new trial on June 29, 2015. The trial court held a hearing on the motion, as amended, on May 20, 2016, and denied the motion on November 4, 2016. Appellant filed a notice of appeal on December 2, 2016. Upon receipt of the record, the case was docketed to the April 2017 term of this Court and submitted for a decision to be made on the briefs.

officer. The officer asked Wiggins who stabbed him, but Wiggins was running out of breath and was unable to answer. Wiggins eventually died from the injury he sustained to his neck. At trial, Daniels said he saw appellant hit the victim immediately before the victim ran out of the restaurant toward the police officer. Daniels also testified he saw appellant stab the victim.[2] Fields, who was the other alleged eyewitness to the incident, could not be located and did not testify at trial.

Appellant represented himself for the first day and a half of trial. On the second day of trial, during his cross-examination of Daniels, who was the fourth witness for the State, appellant decided he wanted to be represented by the public defender who had been standing by to represent him if requested. Trial counsel took over the cross-examination of Daniels and continued to represent appellant for the remainder of the trial.

1. The evidence summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which the jury returned verdicts of guilty. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

---

[2] During appellant's presentation of evidence, the investigator who interviewed Daniels testified that Daniels told him that he had not seen the stabbing.

2.   Appellant alleges counsel was constitutionally ineffective for his alleged failure to object to the testimony of the district attorney's investigator and for his failure to request a jury instruction concerning appellant's wearing prison attire during his trial.  In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citations and punctuation omitted.)   Pruitt v. State, 282 Ga. 30 (4) (644 SE2d 837) (2007).  If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869 (2) (734 SE2d 876) (2012).  In this case, appellant has failed to meet his burden.

(a) The State proffered its investigator to testify about her unsuccessful efforts to locate Fields, who allegedly witnessed the crime along with Daniels.  During her testimony, the investigator stated that Fields had no criminal record other than an arrest for the violation of a city ordinance.

Defense counsel made an objection which the trial court sustained.[3]   In addition, the trial court instructed the jury to disregard the testimony in question.  On appeal, appellant complains about this very same testimony on a theory of deficient performance.  Since the record clearly shows defense counsel successfully objected to the testimony in question, counsel was not deficient.  Appellant urges that the trial court's curative instruction was not sufficient to clear the testimony from the jurors' minds.  Yet, in the absence of proof to the contrary, we presume that the jury followed the trial court's instructions to disregard the testimony at issue.  See Coleman v. State, 301 Ga. 721 (3) (804 SE2d 24) (2017).  This allegation of error cannot be sustained.

(b) On the first day of trial, prior to jury selection and while appellant was representing himself pro se, the trial court inquired whether it was appellant's choice to wear his orange prison attire, and appellant responded in the affirmative.  At the beginning of the second day of trial, when

---

[3] The relevant colloquy is as follows:

> WITNESS:  I eventually did a criminal history and realized that [Fields] had been arrested in May in New York, Brooklyn, she had been released, it was just a city ordinance, a public [lewdness]. Made contact with the district attorney's office as well as the police precinct. No one was very familiar with her. She does not have a lengthy criminal history at all. Actually that was the only arrest.
> DEFENSE COUNSEL:   Objection, your honor. I think that was a gratuitous statement about someone who is not even here.  Ask the jury to ignore that part.
> TRIAL COURT:   Sustained. Ladies and gentlemen, please disregard the last statements. Please ask questions, please don't go into a lengthy narrative. Thank you.

appellant was still representing himself, the trial court again inquired as to whether he wanted to wear his prison attire, and appellant again responded in the affirmative. During closing argument, the prosecutor argued that appellant wore his prison attire in order to garner the jury's sympathy.

On appeal, appellant argues that defense counsel was deficient for failing to request an instruction informing the jury that no "negative or harmful considerations" could be made from appellant's prison attire. At the motion for new trial hearing, however, appellate counsel did not ask trial counsel about why he did not request such an instruction upon taking over the trial from appellant. In the absence of such questions, we presume that counsel's decision not to request such a jury instruction was strategic. See Cantu v. State, 304 Ga. App. 655 (2) (b) (697 SE2d 310) (2010). A strategic decision about what jury instruction to request will be deemed deficient performance only if it is patently unreasonable. See id.; Jessie v. State, 294 Ga. 375 (2) (a) (754 SE2d 46) (2014). Given the situation trial counsel faced, in which appellant had made the voluntary decision to wear his jail clothes in court before counsel took over his representation, we cannot say counsel's decision not to call further attention to the issue was patently unreasonable.

3. Appellant contends the trial court erred when it failed to give his requested charge on impeachment by prior conviction. This allegation of error concerns Daniels's testimony. On cross-examination, defense counsel was able to elicit an admission from Daniels that he had a 1988 felony drug conviction. The State objected to the admission of the evidence, in particular because the requirements of OCGA § 24-6-609 (b)[4] had not been met; however, the trial court allowed the evidence to come in. The trial court declined appellant's request for a charge on impeachment by prior conviction, but said trial counsel could reference the prior conviction in his closing argument.[5] The trial court did, however, give the following instruction regarding impeachment as part of its charge on witness credibility: "To impeach a witness is to show that the witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified."

Since the requirements of OCGA § 24-6-609 (b) had not been met, Daniels's 1988 conviction should not have been admitted. Thus, the fact that appellant was allowed to use the prior conviction evidence at all, inured to

---

[4] Since appellant was tried after January 1, 2013, the new Evidence Code is applicable.

[5] Trial counsel did in fact mention the prior conviction during his closing argument as follows: "I remind you that Mr. Daniels has served a prison term involving a cocaine charge, a conviction. That's the person you are asked to put all your faith in. Prison."

6

his benefit. The attendant failure of the trial court to give the charge requested was harmless error because it is not highly probable that the error contributed to the verdict. See Reddick v. State, 301 Ga. 90 (1) (799 SE2d 754) (2017). Indeed, despite not having specific instructions on impeachment by conviction, the trial court did properly instruct the jury on impeachment in general, and, during closing argument, defense counsel was able to use the prior conviction, as well as other evidence,[6] to argue to the jury that Daniels's testimony was not worthy of belief. Accordingly, reversal of appellant's convictions is unwarranted.

4. Appellant contends the trial court abused its discretion when it gave the Allen[7] charge after a juror stated his unwillingness to continue listening and discussing the case with the other jurors. During the course of its deliberations, the jury sent the trial court a note that two of the jurors had made up their minds and that one of those two jurors had stated an unwillingness to deliberate any further. The trial court made inquiries of the juror who was identified as unwilling to deliberate and confirmed that the juror had come to a conclusion and was not willing to listen or discuss the

---

[6] Trial counsel reminded the jury that Daniels initially told police he had not seen the stabbing and that Daniels had been drinking on the night in question.

[7] Allen v. United States, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896).

evidence with the other jurors any further. The trial court announced that it would be striking the juror and replacing him with the alternate. Appellant objected and requested the trial court to continue to make inquiry or to give the Allen charge. The trial court inquired of the juror once again, and the juror again confirmed that he was unwilling to deliberate further. At that point the State also requested the Allen charge, and the trial court gave the charge as the parties requested. Since appellant requested the Allen charge, he cannot now be heard to complain of any purported error which his conduct engendered. See Grimes v. State, 296 Ga. 337 (4) (a) (766 SE2d 72) (2014).

To the extent appellant complains counsel was deficient for requesting the Allen charge, rather than requesting some other action by the trial court, such claim also cannot be sustained. At the motion for new trial hearing, trial counsel testified that he asks for an Allen charge in such circumstances, rather than juror removal or mistrial, because, in his experience, requesting the Allen charge hastens jury deadlock and increases the chance the trial court will grant a mistrial. Thus, counsel's requesting the charge was a strategic decision which was not outside the broad range of professional conduct so as to render his performance deficient. See State v. Mobley, 296 Ga. 876, 881-882 (770 SE2d 1) (2015).

5. During its deliberations, the jury sent a note to the trial court, asking the following question: "If we find the defendant guilty of aggravated assault, must we also . . . find [him] guilty of felony murder or are the two charges independent?" The trial court responded as follows: "Each count must be considered separately. However, Count 3 is identified as the underlying felony stated in Count 2. Please continue to deliberate." Appellant objected, arguing that the trial court should add the words: "Yes, you can find the defendant guilty of one, not guilty of the other." The trial court refused appellant's request because it believed adding such language would constitute improper commenting on the evidence. However, the trial court noted appellant's objection for the record. On appeal, appellant complains the trial court's response improperly emphasized the count of felony murder such that the jury would conclude it was required to find appellant guilty of felony murder if it found him guilty of aggravated assault. We disagree.

We review the initial jury charges and the recharge as a whole to discern any alleged error regarding the recharge. See Glover v. State, 296 Ga. 13 (4) (764 SE2d 826) (2014). There is no dispute that the initial charges given concerning each count in the indictment were proper. The jury was also properly admonished to treat each count in the indictment separately.

The recharge at issue reiterated that each count was to be considered separately and, as such, constituted a correct statement of the law. The recharge also correctly stated that Count 3 (aggravated assault) was the underlying felony mentioned in Count 2 (felony murder). The fact that the jury acquitted appellant of malice murder indicates it understood the concept of considering each count in the indictment separately. There was no reversible error.

Judgment affirmed. All the Justices concur.

Decided October 16, 2017.

Murder. DeKalb Superior Court. Before Judge Boulee.

Dell Jackson, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Gerald Mason, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.