305 Ga. 750
FINAL COPY

S19A0101.  JONES v. THE STATE.

BENHAM, Justice.

Appellant Michael Donnta Jones was convicted of two counts of malice murder in connection with the shooting deaths of Forrest Ison and Alice Stevens. [1]  On appeal, Appellant challenges the trial court's ruling on the admissibility of certain testimony, contends that the trial court erred when it did not declare a mistrial, and asserts that trial counsel rendered constitutionally ineffective assistance.  For the reasons that follow, we affirm.

---

[1] In October 2014, a Chatham County grand jury indicted Appellant for two counts of malice murder, two counts of felony murder predicated on aggravated assault, and two counts of aggravated assault.  Appellant and Nathaniel Wilkins were indicted together, but tried separately on these charges.  Following a trial conducted April 19-25, 2016, a jury found Appellant guilty on all counts.  The trial court sentenced Appellant to two consecutive life-without-parole sentences on the two malice murder counts; the remaining counts either merged for sentencing purposes or were vacated as a matter of law.  Appellant filed a timely motion for new trial on May 24, 2016, and amended the motion on March 6, 2017.  Following a hearing, the trial court denied the motion as amended on December 18, 2017.  A timely notice of appeal was filed on December 28, 2017; this case was docketed to this Court's term beginning in December 2018 and was thereafter submitted for a decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. During the late evening hours of November 3, 2013, Appellant and Nathaniel Wilkins were riding in a car driven by Tracy Burgess — Appellant's girlfriend and Wilkins's sister — looking for Ison. The trio had plotted to rob Ison, and once they spotted his vehicle, they followed it to Ison's house. Burgess parked across the street from the residence, and Appellant and Wilkins, both armed, went to hide in nearby bushes. When Ison and Stevens got out of the vehicle, Appellant and Wilkins approached the couple with guns drawn. Stevens screamed, and both Appellant and Wilkins fired at the pair and then fled on foot; Burgess drove away.

Ison was declared dead at the scene, and Stevens died en route to the hospital. A forensic pathologist determined that the cause of death for both victims was multiple gunshot wounds. Both victims were shot once in the chin by a .45-caliber bullet and once in the head with a .22-caliber bullet. The murder weapons were never recovered.

Over the next several days, Appellant told several people that he and Wilkins had killed two people in a robbery. Appellant told a friend that Wilkins shot first and that Appellant had to "finish it off" so there would be no witnesses. Appellant also showed his friend a .40- or .45-caliber pistol that he said he had used during the shooting.

1. Although Appellant does not challenge the sufficiency of the evidence with respect to his convictions, in accordance with this Court's standard practice in appeals of murder cases, we have reviewed the record and find that the evidence, as stated above, was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of those offenses. *Jackson v. Virginia*, 443 U. S. 307 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant argues that the trial court made five errors regarding the admissibility of testimony. "[T]he trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Anglin v. State*, 302 Ga. 333 (2) (806 SE2d 573) (2017).

(a) Appellant first contends that the trial court erroneously permitted the State to elicit inadmissible hearsay from an acquaintance of Wilkins, Joris Cooper.  Cooper testified that Wilkins had threatened him several months after the murders but before anyone had been arrested, insinuating that he would be killed if he cooperated with the murder investigation.  Appellant argues that Cooper's testimony concerning Wilkins's comment was inadmissible hearsay because the threat did not fit under the co-conspirator exception to the hearsay rule pursuant to OCGA § 24-8-801 (d) (2) (E).[2]  According to Appellant, the conspiracy had ended at the time of the threat because both co-defendants had already made several incriminating statements to other people before the alleged threat was made.  We disagree.

A statement in furtherance of a conspiracy made during the

---

[2] OCGA § 24-8-801 (d) (2) (E) provides in relevant part:

Admissions shall not be excluded by the hearsay rule.  An admission is a statement offered against a party which is . . . [made] by a coconspirator of a party during the course and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy. . . .

concealment phase of the conspiracy is admissible when the State establishes, before the close of evidence at trial, a prima facie case of conspiracy independent of the co-conspirator's statement. See *Davis v. State*, 302 Ga. 576 (4) (805 SE2d 859) (2017). In this case, the State presented evidence that Burgess, Wilkins, and Appellant had formed a conspiracy to rob Ison on the night of the murders. See *Hassel v. State*, 294 Ga. 834 (3) (755 SE2d 134) (2014) (stating that a conspiracy consists of an agreement between two or more persons to commit a crime); see also *Kemp v. State*, 303 Ga. 385 (2) (b) (810 SE2d 515) (2018) (noting that the new Evidence Code "also carries forward aspects of the co-conspirator rule that existed under our old Evidence Code — principally, that a conspiracy does not necessarily end upon the achievement of its object"). Although Appellant and Wilkins had made several incriminating statements to other individuals before Wilkins threatened Cooper, Wilkins's threat toward Cooper was made in furtherance of the conspiracy because it was designed to keep law enforcement from uncovering the conspiracy resulting in the murder. *Kemp*, 303 Ga. at 393 (2) (b)

(stating "[w]e apply a liberal standard in determining whether a statement is made in furtherance of a conspiracy, and statements that further the interests of the conspiracy in some way meet this standard"). Therefore, the trial court did not abuse its discretion by denying Appellant's objection. See id.

(b) Next, Appellant argues that the trial court erred by preventing Appellant from cross-examining Cooper about his prior grand jury testimony. On direct examination, Cooper testified that the gun Wilkins possessed while threatening him was a black revolver. On cross-examination however, Appellant elicited testimony from Cooper that he had previously testified before the grand jury that the firearm was a "black automatic." Defense counsel then asked Cooper "[a]nd obviously that's in direct conflict of what your testimony is here today; is that correct?" The State objected to that question on the basis that it invaded the province of the jury, and the trial court sustained the objection.

Appellant contends he had a right to ask Cooper whether his trial testimony was in direct conflict with his prior grand jury

testimony. However, even if we assume the trial court's ruling was erroneous, it was harmless because Cooper's prior answer plainly identified the conflict Appellant sought to highlight in his subsequent question. See *Duckworth v. State*, 268 Ga. 566 (2) (492 SE2d 201) (1997) (finding error in limiting cross-examination harmless when the inconsistencies trial counsel sought to highlight were known to the jury).

(c) Appellant next argues that the trial court erroneously prohibited the admission of a photograph depicting Wilkins and an individual known as "Peanut" together on the beach.

During direct examination, Burgess testified that the car she drove to Ison's house belonged to her cousin "Peanut." She said that Peanut, Wilkins, and Appellant were talking outside of her friend's house before she picked up Appellant and Wilkins and drove them to the crime scene. Burgess did not make any claims during her trial testimony that Peanut committed the crimes. On cross-examination, Burgess admitted that she had previously told her sister that Peanut drove the car to the scene and that Wilkins and

Peanut committed the crimes while Appellant remained in the car with Burgess. Burgess was impeached on this discrepancy, and Appellant attempted to have a photo admitted that depicts Wilkins and Peanut standing together on the beach. The trial court disallowed the photo for lack of relevance.

Questions of relevance are within the sound discretion of the trial court, and absent a clear abuse of discretion, a court's decision to exclude evidence on the grounds of a lack of relevance will not be disturbed on appeal. See *Taylor v. State*, 297 Ga. 132 (3) (772 SE2d 630) (2015). Here, the photograph only established, at most, that Wilkins and Peanut were acquainted, a fact that was not in dispute. The photograph did not help determine whether Peanut or Appellant committed the murders with Wilkins. See OCGA § 24-4-401 (providing that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Accordingly, the trial court did not abuse its discretion by excluding irrelevant evidence. See

OCGA § 24-4-401.

(d) Appellant's next claim relates to his cross-examination of Burgess, who testified at trial for the State following a plea agreement that provided that she could be sentenced to no more than ten years in prison.

Burgess was separately indicted for several crimes against both victims; she faced two possible life sentences, up to 20 years on two aggravated assault counts and up to 10 years on two conspiracy counts. When Appellant sought to question Burgess about her parole eligibility on these possible sentences, the State objected, and the trial court sustained that objection. Appellant contends that he was wrongfully prevented from asking Burgess about her potential parole eligibility if she had not reached a plea agreement.

When a witness could become eligible for parole earlier through the interaction of the district attorney's charging decisions, there may be a provable disparity that is a legitimate subject for cross-examination. *Manley v. State*, 287 Ga. 338 (2) (698 SE2d 301) (2010). Here, even if the trial court erred in limiting Appellant's

cross-examination on the issue of parole eligibility, any error was harmless. See id. at 343 (2). Trial counsel elicited substantial testimony from Burgess concerning the favorable plea deal resulting in a major reduction in the sentences Burgess faced, thereby establishing Burgess's potential bias toward the State. In light of Appellant's cross-examination and the strength of the evidence against him, there is no reversible error. See id.

(e) Appellant contends that the trial court erroneously overruled his objection and permitted the lead detective to testify about whether it was common for investigators to have to seek out witnesses in a homicide investigation. Appellant argues that the detective's testimony was inadmissible because it improperly bolstered the credibility of other witnesses. We disagree.

Appellant made incriminating statements to numerous individuals who ultimately testified for the State. Most of these individuals gave statements to investigators because the detective contacted them, not because they came forward on their own. Trial counsel cross-examined these witnesses on this issue in an attempt

to impeach their credibility and assign ulterior motives to their statements and testimony. Consequently, Appellant raised the issue of the witnesses' cooperation and veracity, and the lead detective's testimony about his experience with witnesses in homicide cases — when read in context — did not go to whether the witnesses in this case were ultimately telling the truth. See *Brown v. State*, 302 Ga. 454 (2) (b) (807 SE2d 369) (2017) (stating that there is no improper bolstering when a witness's statement does not directly address the credibility of another witness). Rather, the lead detective's testimony only showed that, in general, it was common for him to have to reach out to witnesses in murder cases. Therefore, the trial court did not abuse its discretion by allowing the lead detective to testify about common police practices. See id.; *Anglin*, 302 Ga. at 342 (7).

3. Appellant argues that the trial court erroneously denied his motion for mistrial made after, he says, the lead detective improperly commented on his right to remain silent. We disagree. During direct examination of the lead detective, the State asked,

"And at some point, having interviewed all the people that gave the statements, including everybody that testified in this trial, did you bring the case file to me and did we take the thing to the grand jury?" and the lead detective answered, ". . . I interviewed [Appellant] at one point." Appellant made a motion for mistrial; the trial court denied the motion after concluding that the statement was not intentionally elicited by the State. The court issued a curative instruction instead and let the State continue. Defense counsel objected to the instruction and renewed his motion for mistrial.

Whether to grant a mistrial is within the trial court's discretion, which an appellate court will not disturb "unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Fulcher v. State*, 297 Ga. 733 (3) (778 SE2d 159) (2015). Here, even assuming the testimony was a comment on Appellant's silence, the comment was non-responsive and made in passing. Further, juries are presumed to follow curative instructions in the absence of proof to the contrary. *Cannon v. State*, 302 Ga. 327 (2) (a) (806 SE2d 584) (2017). Appellant has provided

no evidence that the jury disregarded the court's instruction and therefore this allegation of error cannot be sustained. See id.

4. Lastly, Appellant claims that his trial counsel was constitutionally ineffective because he failed to object or move for a mistrial in five separate instances. We disagree.

To succeed on these ineffective assistance of counsel claims, a defendant must satisfy both prongs of the *Strickland v. Washington* test. *Strickland v. Washington*, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). First, the defendant must show counsel's performance was deficient by showing counsel made errors so serious that it was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. See id. "The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." *Domingues v. State*, 277 Ga. 373 (2) (589 SE2d 102) (2003). Second, the defendant must show the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome

of the trial. See id.

Since a defendant must satisfy both prongs, this Court does not need to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U. S. at 697 (IV). The trial court's factual findings and credibility determinations are reviewed under a clearly erroneous standard, but this Court will independently apply the legal principles to the facts. *Suggs v. State*, 272 Ga. 85 (4) (526 SE2d 347) (2000).

(a) Appellant first alleges that trial counsel was ineffective because he failed to object or move for a mistrial when the State introduced in-life photographs of Ison and Stevens through their respective mothers. Appellant contends that other witnesses could have identified the photographs and that "something happened" during Stevens's mother's testimony because the record reflects that the State asked her if she "need[ed] a minute?" when she had the photograph.

Although this Court has warned against utilizing family

members to identify in-life photographs of a victim, the harm this Court aims to limit is "the risk of a family member's emotional outburst during trial." *Kilpatrick v. State*, 276 Ga. 151 (2) (575 SE2d 478) (2003). The State asked Stevens's mother if she "need[ed] a minute"; however, Appellant presented no evidence that either witness had an emotional outburst at trial. Moreover, neither the trial court nor trial counsel could recall any emotional outburst from either of the victims' mothers. Therefore, even assuming trial counsel performed deficiently, Appellant has not shown prejudice. See *Domingues*, 277 Ga. at 374 (2).

(b) Relatedly, Appellant contends trial counsel was ineffective because he failed to object or move for a mistrial when the State declared during its closing, "[t]hat's what [Appellant] thinks of the son and daughter of these folks in this case." Appellant claims that if trial counsel had prevented the victims' respective mothers from testifying the State would have been unable to make this improper statement during its closing.

Even assuming the victims' mothers had not been called to

testify, the State would have been able to refer to the victims by their relationships to their families. See *Ward v. State*, 262 Ga. 293 (6) (g) (417 SE2d 130) (1992) (stating that it was not impermissible to remind the jury that family members of the victim have lost someone). Therefore, the State's comment referring to that relationship was not improper and consequently provided no opportunity to make a meritorious objection. Trial counsel's failure to make a meritless objection to the State's closing argument is not evidence of ineffective assistance of counsel. *Scott v. State*, 290 Ga. 883 (7) (a) (725 SE2d 305) (2012).

(c) Appellant argues that trial counsel was ineffective because he failed to object or move for a mistrial following another remark by the State during closing argument. At some point, Victor Munn — the father of Appellant's estranged wife, Jocelyn Jones — told investigators that they should interview Jocelyn because she had information concerning the murder; Munn did not testify. During its closing, the State asserted "Victor Munn says my daughter knows something about this, my son-in-law confesses to her." Trial counsel

did not object, but stated in his motion for new trial testimony that he should have objected because the argument was based on facts not in evidence.

Pretermitting whether trial counsel should have objected to this statement, Appellant cannot show prejudice. Numerous witnesses at trial testified that Appellant confessed to his crimes, and Burgess testified that she saw Appellant shoot the victims. Therefore, in light of the strong evidence of Appellant's guilt, Appellant cannot show this statement during closing likely affected the outcome of the trial. See *Domingues*, 277 Ga. at 374 (2).

(d) Appellant claims trial counsel was ineffective because he failed to object or move for a mistrial when the State questioned the lead detective about Jocelyn's decision not to invoke her marital privilege and, also, when the State commented on her decision during its closing argument. Appellant argues that the references to marital privilege were improper because there is no evidence that Jocelyn knew, or was ever informed, that she had such a privilege.

Trial counsel testified at the motion for new trial hearing that

he did not object or move for a mistrial in either instance because her testimony aligned with his ability to argue Jocelyn was an angry, estranged spouse that was biased against Appellant. Therefore, Appellant has not demonstrated that trial counsel's strategic decisions not to object were unreasonable under the circumstances. See *Dent v. State*, 303 Ga. 110 (4) (a) (810 SE2d 527) (2018) (stating that trial counsel's decision not to object to the admission of evidence was not professionally unreasonable because the admitted evidence supported trial counsel's trial strategy).

(e) Finally, the effect of prejudice resulting from counsel's deficient performance is viewed cumulatively. *Schofield v. Holsey*, 281 Ga. 809 (II) n. 1 (642 SE2d 56) (2007) ("[I]t is the prejudice arising from 'counsel's errors' that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum."). For the reasons stated above in Divisions 4 (b) and (d), however, Appellant has failed to show deficiency in his counsel's performance. *Smith v. State*, 296 Ga. 731 (2) (770 SE2d 610) (2015) (a failure to satisfy either prong is "sufficient to defeat a claim of

ineffective assistance") (citation and punctuation omitted). The cumulative prejudice from any assumed deficiencies discussed in Divisions 4 (a) and (c) is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. Thus, Appellant has failed to meet his burden under the *Strickland* test.

Judgment affirmed. All the Justices concur.

Decided May 6, 2019.

Murder. Chatham Superior Court. Before Judge Freesemann.

Steven L. Sparger, for appellant.

Meg E. Heap, District Attorney, Jerome M. Rothschild, Jr., Emily C. Puhala, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.