**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**October 28, 2020**

# In the Court of Appeals of Georgia

A20A1079. SPIRES v. THE STATE.

PIPKIN, Judge.

Appellant Steven Spires was convicted of aggravated child molestation, incest, sexual exploitation of children, and three counts of child molestation. On appeal, Spires contends that the evidence was insufficient to sustain his convictions, that the courtroom was improperly closed during two portions of his trial, that the trial court erred in permitting the State to adduce certain testimony, and that there are merger errors. Finding no reversible error, we affirm.

The victim, B. S., is Spires' biological daughter. B. S. moved in with Spires and his wife when she was approximately eight years old. B. S. testified that her father began having sexual intercourse with her when she was ten years old and that it occurred approximately every day until she moved back in with her mother when

she was approximately twelve years old; she also testified that she performed oral sex on Spires, though she did not know how many times. B. S. testified that, while she was living with him, Spires bought her lingerie; she also testified that he bought her a smart cellular telephone and that he used this device to record the pair engaging in sexual acts. Although B. S. tried to delete the videos when she moved back in with her mother, the videos were recovered from the device by a concerned family member and then by law enforcement. The videos depict B. S. performing oral sex on and engaging in vaginal intercourse with an adult male. While the man's face cannot be seen, B. S. identified the man in the video as her father. Further, various features in the video match the master bedroom of Spires' residence in Spalding County, Georgia; a search of Spires' bedroom revealed underwear and lingerie matching that which is worn in the video by B. S. and the faceless man. Additionally, certain markings on Spires' hand match those seen on the male depicted in the video.

Following the discovery of their sexual relationship, Spires took B. S. from her mother's residence and "ran away" with her. An Amber Alert was issued for B. S., and Spires had B. S. call a local news station to report that she had run away on her own and that her father had not hurt her. B. S. testified that, during this time, Spires continued to have sex with her. The jury also heard from Spires' former girlfriend

who stayed with Spires and B. S. in a hotel room while they were on the run. She testified that Spires advised her that he would be sharing a bed with B. S. and that B. S. usually slept in only a bra and underwear; she further testified that Spires and B. S. shared a bed in the hotel room. Spires and B. S. were eventually discovered in a hotel room in Henry County, Georgia. Spires was taken into custody, but was released on bond on the condition that he have no contact with B. S. Shortly after his release, however, Spires took B. S. from a group home in metro Atlanta. Spires had B. S. alter her appearance and change her name, but the pair were found approximately ten days later.

The State also presented witnesses concerning Spires' two prior convictions for misdemeanor statutory rape. The jury first heard from K. C. who testified that she encountered Spires in an AOL chat room in 2000 when she was 13 years old and he was 16-17 years old; the pair eventually met in person. K. C. testified that, at Spires' request, she made a video recording of herself masturbating and gave it to him; she told the jury that, at some point, he also made a video recording of her masturbating. According to K. C., her father discovered one of the recordings and forbade her from seeing Spires; however, the two continued to communicate, and Spires convinced her to "run away" with him. K. C. testified that Spires kept her secluded in a tent in the

3

woods near his family's house where the pair engaged in sexual activity and that Spires pressured her for oral sex. K. C. explained that she wanted to leave but was afraid of Spires, who could become violent. Eventually, K. C. was returned home after law enforcement became involved. Spires subsequently pled guilty to misdemeanor statutory rape involving K. C., and the State tendered a certified copy of that September 2008 conviction.

B. K. testified that she encountered Spires in a Walmart parking lot while out with a friend in January 2003; she was 15 years old at the time, and Spires was 18 years old. On her second date with Spires, he persuaded her to have sexual intercourse in the back of an SUV; at a later date, the pair engaged in sexual intercourse in a camper. B. K. also testified that Spires tried to convince her to make a video recording of their sexual activity, but she refused. Spires subsequently pled guilty to misdemeanor statutory rape involving B. K., and the State tendered a certified copy of that August 2008 conviction.

The jury also heard from an inmate with whom Spires shared a cell during his pre-trial detention. According to the inmate, Spires discussed the charges against him at length, and identified the victim as his biological daughter. The inmate testified that Spires admitted to using his finger to penetrate B. S.'s vagina when he first

4

started abusing her and that Spires also described a beach vacation during which the pair engaged in sexual activity. The State adduced photographs of Spires and B. S. at the beach; the photographs depict, among other things, B. S. wearing a two-piece bathing suit covered by a t-shirt, which Spires' cellmate had described from his conversations with Spires.

Finally, the jury heard from witnesses called by the defense. Spires' ex-wife, Julie, opined that the man in the video was not her former husband, but she acknowledged that facets of the relationship between B. S. and Spires were unusual. She testified that B. S. would call Spires by his first name and that, if there was any display of physical affection between herself and Spires, B. S. would get aggressive and jealous. Finally, Spires testified on his on behalf. He acknowledged having "run off" with B. S. and having discussed the case with his cellmate, but he denied having had any sexual contact with B. S.

1. Spires first argues that the evidence was insufficient to sustain his convictions for aggravated child molestation and two counts of child molestation. We disagree.

In addressing these claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). This Court neither weighs the evidence nor resolves issues of witness credibility. *Shepherd v. State*, 353 Ga. App. 228, 228 (836 SE2d 221) (2019). With these principles in mind, we look to each of Spires' claims.

(a) The first count of the indictment charges Spires with aggravated child molestation, see OCGA § 16-6-4 (c), alleging that Spires "did commit an indecent act to [B. S.], a child under the age of 16 years, involving the sexual organs of the accused and the mouth of said child, with the intent to arouse the sexual desires of himself by placing the child's mouth on [] his penis." (Emphasis supplied.) Spires contends that the averment "placing the child's mouth on his penis" was an essential element of the charged offense but that there was no such corresponding evidence presented at trial. Instead, Spires says that the evidence tended to show that B. S. "did place her mouth on the penis of the accused," and, thus, that the State's evidence failed to prove the offense as alleged in Count 1 of the indictment. To be clear, Spires is not arguing that there was insufficient evidence of oral sodomy, but instead, he contends that the oral sodomy was not established as it was alleged in the indictment; Spires' enumeration, then, is a fatal variance claim. See *Brown v. State*, 307 Ga. 24,

6

28 (1) (834 SE2d 40) (2019) (a fatal variance claim asserts that there is "a deviation between the allegations in the indictment and the evidence adduced at trial"). Because Spires did not raise a fatal variance claim before the trial court, this argument is waived on appeal. See *Thompson v. State*, 324 Ga. App. 20, 21 (749 SE2d 27) (2013) ("Thompson did not raise his fatal variance argument in the trial court and has therefore waived the issue for consideration on appeal.").

To the extent Spires challenges the sufficiency of the evidence, ample evidence authorized Spires' conviction. B. S. testified that Spires would "have [her] perform . . . oral sex with him," that she could not recall how many times she had performed oral sex on him, and the video depicting B. S. performing oral sex on Spires shows Spires touching his hand to B. S.'s head. Thus, the jury could have reasonably concluded that Spires placed B. S.'s mouth on his penis as alleged in Count 1 of the indictment.

(b) Spires next argues that the evidence was insufficient to sustain his convictions for two counts of child molestation, specifically, Counts 7 and 11. Count 7 charged that Spires "did commit an indecent act to [B. S.], a child under the age of 16 years, with the intent to arouse the sexual desires of himself by touching, grabbing, and squeezing [B. S.'s] buttocks during explicit conduct." Count 11 charged that

Spires "did commit an indecent act to [B. S. ], a child under 16 years, with the intent to arouse the sexual desire of himself by touching the vagina of [B. S.]." According to Spires, B. S.'s testimony does not support either conviction and, he says, "the record is devoid of other evidence that supports the convictions for the[se] acts." This argument focuses on B. S.'s testimony and ignores other evidence adduced at trial. Specifically, the cell-phone recordings depicting B. S. and Spires engaged in sexual activity show Spires grabbing B. S.'s buttocks and show him touching her vagina; further, Spires admitted to his cellmate before trial that he had digitally penetrated B. S.'s vagina when he first started abusing her. Accordingly, this argument is without merit.

2. The trial court closed the courtroom when B. S. testified and then again during deliberations when the jury asked to re-watch the videos depicting the sexual abuse. Spires argues on appeal that the trial court erred in this regard. We address each instance of courtroom closure in turn.

(a) During a pre-trial hearing, the State made a motion under OCGA § 17-8-54 to have the courtroom closed while B. S. testified. In response, Spires speculated that the trial court had little discretion under the statute, but objected on the basis that his

8

trial was a "public forum."[1] The trial court did not immediately rule on the motion but, instead, took the matter under advisement. At the start of trial two weeks later, the trial court announced its decision to close the courtroom during B. S.'s trial testimony. Spires now argues that the trial court failed to properly weigh the competing interests in closing the courtroom and that this failing violated his Sixth Amendment right to a public trial. Spires' claim is without merit.

The relevant statutory provision provides as follows:

In the trial of any criminal case, when any person under the age of 16 is testifying concerning any sexual offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, victim assistance coordinators, victims' advocates, and such other victim assistance personnel as provided for by Code Section 15-18-14.2, jurors, newspaper reporters or broadcasters, and court reporters.

OCGA § 17-8-54. As we have said before, OCGA § 17-8-54 is "based upon a legislative determination that there is a compelling state interest in protecting children while they are testifying concerning a sex offense." (Citation omitted.) *Hunt v. State*,

---

[1] Spires objected to "the code section [as] written. If somebody's testifying, this is a public forum. And to bring charges, you have to face the accuser and everyone else."

268 Ga. App. 568, 571 (1) (602 SE2d 312) (2004). In this case, the partial closure of the courtroom – which allowed members of the press, among others, to remain in the courtroom – was permitted under this code section and did not violate Spires' constitutional right to a public trial. See *Tolbert v. State*, 321 Ga. App. 637, 637 (1) (742 SE2d 152) (2013); see also *Clark v. State*, 309 Ga. App. 749, 751 (2) (711 SE2d 339) (2011); *Goldstein v. State*, 283 Ga. App. 1, 3-4 (2) (640 SE2d 599) (2006). Compare *Jackson v. State*, 339 Ga. App. 313, 314 (793 SE2d 201) (2016) (reversal required for complete courtroom closure during testimony of witness who was 16 years old at the time of trial).

(b) While OCGA § 17-8-54 may have justified the partial closure of the courtroom during B. S.'s testimony, it is inapplicable to the trial court's closure of the courtroom while the jury re-watched the sexual-abuse videos during its deliberations. However, the trial court twice announced its intention to close the courtroom while the video was played for the jury, and Spires did not object in either instance. In fact, Spires appears to have acquiesced to the trial court's decision to bring the jury back into the courtroom to re-watch the video with the courtroom closed. Accordingly, this argument is waived. See *Tolbert*, 321 Ga. App. at 638.

10

3. As referenced above, the State adduced testimony and evidence pursuant to OCGA § 24-4-413 concerning Spires' prior convictions for misdemeanor statutory rape. On appeal, Spires argues that the prior-conviction evidence was "substantially more prejudicial than probative and [was] employed improperly by the State as 'bad character' evidence." This argument is without merit.

OCGA § 24-4-413, provides that "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." The term "sexual assault" as used in this provision includes statutory rape. See OCGA § 24-4-413 (d) (1). OCGA § 24-4-413 is a "rule of inclusion" and provides a strong presumption in favor of admissibility by expressly providing that such evidence "shall be admissible" where it is relevant. *McAllister v. State*, 351 Ga. App. 76, 80 (1) (830 SE2d 443) (2019). Thus, "the State can seek to admit evidence under this provision for any relevant purpose." *Benning v. State*, 344 Ga. App. 397, 401 (810 SE2d 310) (2018). As our Evidence Code explains, "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

11

OCGA § 24-4-401. That being said, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. We will reverse a trial court's ruling to admit evidence of prior sexual assaults only where there is a clear abuse of discretion. See *Steele v. State*, 337 Ga. App. 562, 565-566 (3) (788 SE2d 145) (2016).

Here, the State moved to admit the prior-conviction evidence on the basis that it was relevant to show intent, motive, identity, and knowledge, and the trial court agreed. The court reasoned that, although the prior convictions occurred years before the abuse in this case and involved victims who were a few years older than B. S., the prior convictions demonstrated Spires' interest in and history of video recording his sexual acts. This evidence was relevant to, among other things, determining the identity of the man in the recordings with B. S. The trial court also concluded that any probative value was not substantially outweighed by the prejudicial nature of the evidence. This ruling is sound.

Spires denied being the man in the videos with B. S., and his identity as that man was squarely at issue during trial. Accordingly, the testimony of B. K. and K. C.

12

– which included references to Spires' video recording sex acts – was relevant to the issue of identity. Under these circumstances, we cannot say that the trial court abused its discretion in concluding that the probative value of the evidence outweighed any prejudicial effect. Although Spires contends that the evidence does not pass muster under Rule 403, exclusion of evidence under that rule "is an extraordinary remedy which should be used only sparingly." (Citation and punctuation omitted.) *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016). Indeed, the rule is designed "to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Carter v. State*, 302 Ga. 200, 203 (2) (a) (805 SE2d 839) (2017). Here, the prior convictions were relevant and had substantial probative value; they certainly were not introduced solely for their unfair prejudicial impact. Id.

4. After Spires elected to testify in his own defense, the State impeached him on cross-examination with a 2009 conviction for aggravated assault (family violence), see OCGA § 16-5-21 (i). The State tendered the certified conviction and then explored the factual basis of the conviction with Spires, eliciting testimony that the offense involved him beating the victim in that case and attempting to shove a flashlight in her vagina. Spires argues on appeal that the trial court erred in permitting

13

the State to use this conviction to impeach him, in permitting the State to question him about the factual basis of the conviction, and in failing to provide a limiting instruction concerning the impeachment evidence. There is no reversible error.

"For the purpose of attacking the character for truthfulness of a witness . . . evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused[.]" OCGA § 24-6-609 (a) (1). Evidence of a prior felony conviction "is intended to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony." (Citation and punctuation omitted.) *Smith v. State*, 331 Ga. App. 296, 299 (2) (771 SE2d 8) (2015). "The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness." (Citation and punctuation omitted.) *Robinson v. State*, 336 Ga. App. 627, 631 (3) (785 SE2d 304) (2016).

Generally, we review a trial court's decision for abuse of discretion, *Robinson*, 336 Ga. App. at 627, but, as Spires acknowledges in his brief, he did not offer a timely objection to this evidence or the trial court's failure to issue a limiting

instruction; accordingly, we review this enumeration for plain error only. See OCGA § 24-1-103 (d). That now-familiar standard provides as follows:

> First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation, punctuation, and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted). Id.

Spires argues that the trial court erred in admitting the prior felony conviction without first determining "that the probative value of admitting the evidence outweighs its prejudicial effect to the accused[.]" OCGA § 24-6-609 (a) (1). He further argues that the trial court erred when it permitted the State to inquire as to the factual basis of that conviction. However, Spires has affirmatively waived these

15

arguments. Before he opted to testify, the State announced on the record that it intended to impeach Spires with the aggravated assault conviction, to have that conviction admitted into evidence, and to cross-examine Spires on the factual basis of that conviction. The trial court instructed trial counsel to advise Spires of this tactic and to have him consider it when deciding whether to testify, to which counsel replied, "Yes, sir." During Spires subsequent cross-examination, trial counsel responded that he had no objection to the admission of the prior conviction; the State then explored the factual basis of the conviction, and trial counsel offered no immediate objection.

Although twice presented with the opportunity to challenge the State's tactics, Spires did not; in fact, in both instances, Spires acknowledged the State's intended course. Accordingly, Spires is not entitled to plain-error review on these arguments. See *McAllister v. State*, 351 Ga. App. 76, 88 (3) (830 SE2d 443) (2019) (defendant affirmatively waived any objection to introduction of prior felony conviction where he affirmatively stated during trial that he had "no objection" to its admission). Even if Spires has not affirmatively waived this claim, he is not entitled to a reversal given the strength of the evidence and the fact that the jury was properly instructed on the evidentiary value of Spires' prior convictions.

16

Here, the jury reviewed video depicting B. S. engaging in sexual acts; B. S. identified her father as being in the video; the clothing worn by B. S. and the faceless man were found in Spires' bedroom; certain markings on the man's hand match those on Spires' hand; the room depicted in the video matches Spires' bedroom; Spires twice "ran off" with B. S. and maintained contact with her despite being ordered not to; Spires' girlfriend testified that Spires and B. S. shared a bed in the hotel room; and Spires' pre-trial cellmate testified to various admissions made by Spires while he was awaiting trial. Moreover, the jury had already learned that Spires had pleaded guilty to two other sex crimes and had a history of being "violent" with other victims. Also, Spires acknowledged during direct-examination that he had various criminal convictions, and the trial court twice charged the jury that Spires was "on trial for the offenses charged in [the] indictment only and not for any other acts." Although testimony of the aggravated assault conviction brought forth some concerning details – namely, that Spires had been accused of attempting to shove a flashlight into the vagina of the victim in that case – in light of the strength of the evidence against Spires, he has not demonstrated that the admission of this evidence "probably did affect the outcome below," (citation and punctuation omitted) *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016), which must be established with "some level of

17

certainty and particularity," (citation and punctuation omitted) *Davis v. State*, 302 Ga. 576, 582 (3) (805 SE2d 859) (2017).[2] Accordingly, Spires is not entitled to relief. See *Chitwood v. State*, 352 Ga. App. 218, 226 (3) (b) (834 SE2d 334) (2019) (no plain error arising out of testimony concerning prior bad act where evidence of assault and sexual abuse were overwhelming).

5. Spires next argues that Counts 7 and Counts 11, which allege child molestation arising out of Spires touching B. S. on her buttocks and vagina, respectively, must merge into Counts 1 or 6, which allege aggravated child molestation and child molestation arising out of oral sodomy and sexual intercourse, respectively, because, he says, the evidence "shows that these acts were an intrinsic part and parcel of the acts and conduct that supported the convictions for these other alleged offenses." This argument, however, is premised on a fundamental

---

[2] Our conclusion that any error here does not raise to the level of plain error also disposes of any claim that trial counsel was ineffective for failing to object to the admission and treatment of the aggravated assault conviction. See *Hampton v. State*, 302 Ga. 166, 172 (4) (b) (805 SE2d 902) (2017) ("[F]or the same reasons that we concluded that appellant could not carry his burden to show prejudice on plain error review . . . we conclude that he cannot carry his burden to show prejudice on this ineffectiveness claim."); see also *Williams v. State*, 304 Ga. 455, 460 n.4 (818 SE2d 653) (2018) ("[T]he test for harm under plain error review is equivalent to the test in ineffective assistance of counsel cases for whether an attorney's deficient performance has resulted in prejudice of constitutional proportions.") (punctuation and citation omitted).

misrepresentation of the evidence, namely, that the two videos depict the sole instances of sexual acts between B. S. and Spires. This is inaccurate; this is not a case in which the sexual acts alleged in the different counts were part of a single course of conduct occurring over a relatively short time frame. Instead, the indictment alleged that the various sexual contact occurred over an extended period of time; B. S. testified that the sexual abuse occurred daily, including the time that she and Spires had "run away" together, and that she could not recall the number of times that she had performed oral sex on Spires. Given the manner in which the offenses were indicted and the extensive testimony showing that the charged offenses occurred on numerous different occasions, this argument is without merit. See *Watkins v. State*, 336 Ga. App. 145, 151 (4) (784 SE2d 11) (2016) ("Because each count of the indictment charged [Appellant] with a separate and distinct crime, his convictions for those crimes did not merge for purposes of sentencing."). Compare *Scott v. State*, 306 Ga. 507, 509-510 (2) (832 SE2d 426) (2019) (recognizing that the unit-of-prosecution analysis is necessary where multiple convictions for sexual abuse stem from a single, uninterrupted course of conduct).

6. Finally, Spires argues that trial counsel was ineffective for failing to object to three search warrant affidavits being introduced and shown to the jury.[3] This claim is without merit.

In order to succeed on his claim that trial counsel was ineffective, Spires must demonstrate both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, [Spires] must show that his lawyer performed at trial in an

---

[3] After Spires was convicted, trial counsel withdrew; Spires retained new counsel, who filed an amended motion for new trial and represented Spires at the subsequent hearing. After the hearing but before the trial court entered its written order, new counsel was permitted to withdraw. The trial court then appointed appellate counsel to represent Spires, and, two months later, the trial court issued a written order denying Spires' amended motion for new trial. Appellate counsel has moved this court to remand this appeal to permit Spires to raise an additional claim of ineffective assistance of trial counsel. However, because Spires retained new counsel after his trial, he had ample opportunity to raise any claim pertaining to the effectiveness of trial counsel in his amended motion for new trial; this is not the first opportunity at which Spires could have raised a claim that trial counsel was ineffective and, thus, he is not entitled to a remand. Cf. *Reado-Seck v. State*, 346 Ga. App. 381 (816 SE2d 355) (2018) ("In general, when an appeal presents the earliest practicable opportunity to raise an ineffective-assistance-of-counsel claim, we will remand the case to the trial court for an evidentiary hearing on the issue[.]"). Further, nothing in the record suggests that the trial court was asked to delay its ruling or to re-open the motion for new trial proceedings as a result of the appointment of appellate counsel. Accordingly, we deny Spires' motion to remand.

objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). As to prejudice, Spires must establish that "the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial." *Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019).

Although trial counsel testified at the hearing on Spires' motion for new trial, he did not testify concerning the admission of the warrant affidavits. "Absent evidence to the contrary, the decision not to object to certain evidence is presumed strategic and provides no basis for an ineffective assistance claim." *Glass v. State*, 255 Ga. App. 390, 403-404 (10) (g) (565 SE2d 500) (2002). Trial counsel's silence aside, it appears that the substance of the affidavits was actually useful to the defense. Two of the affidavits reinforce the fact that the deleted videos were not found pursuant to a police investigation but, instead, were recovered by B. S.'s maternal uncle – who resides in California and was mailed the phone – in the middle of a custody dispute between Spires and B. S.'s mother. The third affidavit plainly highlights that B. S. initially denied that she had engaged in any sexual activity with anyone and that, when confronted with the video evidence, she said the video

21

depicted an unknown 13-year-old friend. The affidavits highlighted key points for the defense – namely that the discovery of the videos was suspect and that B. S. was not credible – which trial counsel touched on during closing argument. In light of this, we cannot say that trial counsel's failure to object to the admission of the affidavits was so patently unreasonable that no competent attorney would have chosen the same path. See *Branscomb v. State*, 272 Ga. App. 700, 701 (2) (613 SE2d 222) (2005) (trial counsel not ineffective for failing to object to the jury being provided with search warrant affidavits where the affidavits revealed a weakness in the State's case). Accordingly, Spires is not entitled to a new trial on this basis.

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur*.