308 Ga. 597
FINAL COPY

S20A0103. ROSSER v. THE STATE.

BETHEL, Justice.

A Fulton County jury found Larry Rosser guilty of malice murder and other offenses in connection with the death of Alexis Vereen.[1] Rosser appeals, arguing that the evidence presented against him by the State was insufficient to support the jury's verdicts, that the trial court erred by not granting his motion for

---

[1] The crimes occurred on June 25, 2012. On October 9, 2012, a Fulton County grand jury indicted Rosser on the following six counts: malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a first offender probationer (Count 3), aggravated assault with a deadly weapon (Count 4), possession of a firearm during the commission of a felony (Count 5), and possession of a firearm by a first offender probationer (Count 6).

After a jury trial held from November 4-7, 2013, Rosser was found guilty on all six counts. Rosser was sentenced to life imprisonment for malice murder (Count 1), and five years consecutive for possession of a firearm during the commission of a felony (Count 5). The two felony murder counts were vacated by operation of law, and the trial court purported to merge the remaining counts. The State has not challenged the sentences. See *Dixon v. State*, 302 Ga. 691, 696-698 (4) (808 SE2d 696) (2017).

Rosser filed a motion for new trial on November 12, 2013, and amended it through new counsel on February 9, 2016. On December 20, 2017, the trial court held a hearing on the amended motion, and it subsequently denied the motion on October 10, 2018. Rosser filed a notice of appeal on October 26, 2018. This case was docketed to this Court for its term commencing in December 2019 and submitted for a decision on the briefs.

mistrial, that the trial court erred by allowing the State to introduce a portion of Rosser's custodial statement to law enforcement, and that his trial counsel provided ineffective assistance. Finding no error, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. In 2010, Rosser and Vereen were in a romantic relationship, and they had a child together in June of that year. On August 27, 2010, Rosser and Vereen got into an argument at Rosser's parents' house. In the course of the argument, Rosser hit Vereen, bruising and cutting her face and nose.[2] Rosser also damaged a stroller and broke Vereen's cell phone. Vereen sought a restraining order against Rosser, cut off contact with him, and moved in with her parents. Rosser later pled guilty to misdemeanor battery in connection with this incident.

Sometime later, Vereen resumed contact with Rosser, and the

---

[2] The State introduced photographs of Vereen showing the injuries she sustained in this incident. Both Vereen's stepfather (who came to the house after the incident) and the police officer who responded to a call to the house observed these injuries. The officer testified that Vereen told him that she had been "assaulted" by Rosser.

two resumed their romantic relationship. On June 25, 2012, Rosser had a party at his mother's house, which Vereen, her friend Mariah Jacobs, and Rosser's friend Aaron Jackson attended. Rosser drank some alcohol at the party, and later that evening, Rosser, Vereen, Jacobs, and Jackson rode to the Days Inn on Fulton Industrial Boulevard, where Jackson rented a room. Rosser continued to drink in the hotel room and began "talking crazy." Rosser then pulled out a black semiautomatic .380 Hi-Point handgun. When Vereen and Jacobs attempted to leave the room, Rosser "wrestled" Vereen back inside. Vereen and Jacobs eventually left the room, however, and left the Days Inn. Vereen told Jacobs that Rosser was jealous about someone Vereen used to date.

Rosser and Jackson followed the women outside the Days Inn, where Rosser and Vereen ended up "wrestling" over the handgun. Jacobs left and went to the Airway Motel across the intersection of Old Gordon Road and Fulton Industrial Boulevard from the Days Inn. After she left, Jacobs received a phone call from Vereen, who told her that Rosser was "rubbing" the gun against her head and

saying that he would kill her. Jacobs told Vereen to call her mother. While Jacobs remained outside the Airway Motel, she saw Vereen across the street, attempting to run away from Rosser. Rosser, however, caught up to Vereen. Jacobs then retreated behind the Airway Motel out of fear for her own safety. Jacobs heard Vereen scream and then heard a gunshot. The next morning, Jacobs called Jackson at the Days Inn. Rosser and Vereen had never returned to the motel room. Jacobs tried to call Vereen's cell phone several times, but no one answered.

Later that evening, a passing motorist saw a woman, later identified as Vereen, lying on a sidewalk in front of a business near the intersection of Old Gordon Road and Fulton Industrial Boulevard. Vereen's face was covered in blood, and she was lying in a pool of blood. The motorist called 911, and a patrol officer from the Fulton County Police Department responded to the call. Detective David Coleman of the Atlanta Police Department also came to the scene of the shooting. Police collected a shell casing near Vereen's body that was later identified as a .380 cartridge. Vereen was

transported to a local hospital to be treated for a gunshot wound to the head.

On June 26, Jacobs met with Detective Coleman and provided a statement to him. In her interview, she identified Rosser in a photo lineup.

On June 27, Vereen died in the hospital as a result of the gunshot wound. Later that day, Detective Coleman obtained a warrant for Rosser's arrest on murder charges. Rosser turned himself in to police on June 29 so that he could "talk about what happened" to Vereen. Rosser was placed under arrest, handcuffed, and then transported to the Atlanta Police Department homicide office. Detective Coleman gave Rosser *Miranda* warnings,[3] and Rosser then agreed to speak with him. In that interview, which Coleman recorded with an audio recorder, Rosser told Coleman that his sister had advised him that he should come to the police and tell his side of the story. Rosser initially blamed Jackson for Vereen's

---

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

death. Rosser stated that Jackson was his partner in dealing drugs and that the two got into an altercation over their drug business that night outside the Days Inn. Rosser claimed that Jackson took possession of Rosser's pistol, a .380 Hi-Point, and fired at Rosser as he fled. Rosser claimed that Jackson's shot missed him and hit Vereen.

After Detective Coleman challenged this version of the events, Rosser said he did not remember much about what happened the night of the incident due to his consumption of alcohol. Rosser later asked Coleman if he could erase the recording of the interview so that he could tell "the whole thing." Coleman declined, and Rosser told Coleman that he chased Vereen out of the hotel room and that they were arguing in the parking lot. Rosser then apologized to Detective Coleman for lying earlier in the interview.

In five separate enumerations of error, Rosser challenges the sufficiency of the evidence supporting the jury's verdicts as to Counts 1-5 (malice murder, two counts of felony murder, aggravated assault, and possession of a firearm during the commission of a

felony). Rosser's claims regarding the evidence supporting the felony murder counts and the aggravated assault count are moot, as those counts were either vacated by operation of law or merged for sentencing. See *Mills v. State*, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010); *Lupoe v. State*, 284 Ga. 576, 577 (1) n.2 (669 SE2d 133) (2008). Likewise, although Rosser has not challenged the sufficiency of the evidence as to Count 6 (possession of a firearm by a first offender probationer), any claim Rosser has regarding the sufficiency of the evidence as to that count is also moot, as the trial court purported to merge that count into Count 3 and therefore did not sentence him as to Count 6. Thus, our review of the evidence is limited to the two counts for which Rosser was sentenced: malice murder and possession of a firearm during the commission of a felony.

As to these two counts, Rosser raises the same arguments regarding the sufficiency of the evidence presented. First, citing this Court's decision in *Cuyuch v. State*, 284 Ga. 290 (667 SE2d 85) (2008), Rosser argues that the evidence presented against him was

insufficient because, as he contends in a different enumeration (see Division 3, below), the statement he gave to Officer Coleman should not have been admitted at trial. Rosser also argues that the evidence presented against him was insufficient because it was entirely circumstantial and did not exclude every other reasonable hypothesis other than his guilt. He specifically argues that the evidence did not exclude the hypothesis that Jackson was the person who shot Vereen.

When evaluating the sufficiency of evidence as a matter of federal due process under the Fourteenth Amendment of the United States Constitution, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). The jury's resolution of these issues "adversely to

the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017). Further, as a matter of Georgia statutory law, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Whether alternative hypotheses are reasonable, however, is usually a question for the jury, and this Court will not disturb the jury's finding unless it is insufficient as a matter of law. See *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019).

As to Rosser's first contention, "it is well established that in determining the legal sufficiency of the evidence, this Court considers all of the evidence admitted, including evidence a party claims was erroneously admitted." (Citations and punctuation omitted.) *Glenn v. State*, 306 Ga. 550, 553 (2) n.3 (832 SE2d 433)

(2019).[4] Thus, regardless of whether Rosser's inculpatory statements to Detective Coleman were properly admitted, those statements are considered when evaluating the sufficiency of the evidence presented against Rosser.

Rosser also argues that the evidence did not exclude all reasonable hypotheses other than his guilt. He notes that there were no eyewitnesses to Vereen's shooting and that the State's key witness, Jacobs, admitted that she only heard gunshots and did not see who shot Vereen. Rosser also notes that Jacobs' testimony established that Jackson was with Vereen and Rosser in the middle of the road when the struggle for the gun began. Rosser argues that this testimony corroborates the first version of events that Rosser described when he spoke with police when he said that he and Jackson had gotten into an argument and that Jackson fired at him, accidentally hitting Vereen instead.

---

[4] As we noted in *Glenn*, *Cuyuch* is merely an example of an exception to the general rule for improperly admitted hearsay under Georgia's old Evidence Code — an exception that is no longer relevant under our new Evidence Code. See 306 Ga. at 553 (2) n.3. Because Rosser's trial took place in November 2013, the new Evidence Code applied to his trial. See *Bradshaw v. State*, 296 Ga. 650, 653 (2) n.2 (769 SE2d 892) (2015).

However, the State presented evidence of prior difficulties between Rosser and Vereen, including testimony regarding a violent incident that resulted in Rosser's conviction for battery after he hit Vereen. The evidence also established that, on the evening of the shooting, Rosser brandished a gun and "wrestled" Vereen back into a hotel room when she tried to leave. Rosser later chased Vereen into the street and grabbed her. Testimony also established that Rosser rubbed his gun against Vereen's head and told her that he would kill her. In his police interview, Rosser admitted to having a gun that night. Most importantly, Rosser also admitted to lying to Detective Coleman when giving his initial account of the events leading up to Vereen's death in which he claimed that Jackson accidentally shot Vereen after an argument with Rosser.

Viewed in the light most favorable to the verdicts, the evidence presented by the State supports the jury's verdicts as to the counts for malice murder and possession of a firearm during the commission of a felony. Moreover, the evidence presented at trial — most prominently, Rosser's own statements directly contradicting

the alternate theory of Vereen's death which he now claims to be reasonable — authorized the jury to determine that the proved facts were not only consistent with Rosser's guilt but that they also excluded every other reasonable hypothesis as to who committed the crimes. Thus, when viewed as a whole, the evidence presented at trial was sufficient to support Rosser's convictions for malice murder and possession of a firearm during the commission of a felony as a matter of due process and under OCGA § 24-14-6. See *Frazier v. State*, 308 Ga. 450, 453 (2) (b) (841 SE2d 692) (2020). See also *Brown v. State*, 302 Ga. 454, 456 (1) (b) (807 SE2d 369) (2017) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.") (citation and punctuation omitted).

2. Rosser argues that the trial court abused its discretion by not granting his motion for mistrial. We disagree.

Before trial, the State filed notice of its intention to introduce certain statements made by Vereen to her mother, Kathy Vereen,[5]

---

[5] Kathy Vereen was not called to testify at trial.

and to Jacobs pursuant to the residual hearsay exception found in OCGA § 24-8-807. Rosser moved in limine to exclude such testimony. The trial court denied the motion but indicated that Rosser could object at trial when the State attempted to elicit the statements so that the trial court could rule on them in context.

At trial, Jacobs testified that she heard from Vereen that, on August 27, 2010, Rosser had started a fight with Vereen in front of her children. Jacobs then testified as to details of the alleged incident, including that it resulted in Rosser causing injuries to Vereen's mouth. Jacobs testified that Vereen told her that "[Rosser] slammed [Vereen] on the ground in front of her kid." Jacobs also testified that she did not believe that Rosser cared about Vereen or her children. Rosser objected to this line of testimony, and the trial court sustained the objection, ruling that Jacobs' testimony regarding Vereen's statements to her was inadmissible hearsay. Rosser then moved for a mistrial. The trial court denied the motion but offered the following instruction to the jury: "Members of the Jury, as to Ms. Jacobs testifying, as to the last testimony that she

gave, I'm going to disallow what Ms. Vereen told Ms. Jacobs about how her mouth was injured. So just disregard that like it was never said, and we'll continue."

Citing only the Court of Appeals' decision in *Coleman v. State*, 308 Ga. App. 731 (708 SE2d 638) (2011), Rosser argues that the trial court's curative instruction was insufficient in this instance and that the grant of a mistrial was required in order to preserve his right to a fair trial. We disagree.

"Whether to grant a mistrial is within the trial court's discretion, which an appellate court will not disturb unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019). Moreover, "juries are presumed to follow curative instructions in the absence of proof to the contrary." Id. "[A] new trial will not be granted unless it is clear that the trial courts curative instruction failed to eliminate the effect of the prejudicial comment." *Turner v. State*, 299 Ga. 720, 723 (5) (791 SE2d 791) (2016).

Here, we determine that the trial court's curative instruction was sufficient to protect Rosser from the prejudicial effect of Jacobs' testimony. Although such testimony reflected poorly on Rosser's character, Rosser has offered no evidence that the jury did not follow the trial court's instruction to disregard it. See *Jones*, 305 Ga. at 755 (3). Moreover, the jury saw photographs of the injuries Vereen sustained in the incident and heard testimony regarding the extent of those injuries from her stepfather and the police officer who responded to the incident. The jury also heard evidence that Rosser pled guilty to battery in connection with this incident. Thus, because Jacobs' testimony was largely cumulative of other admissible evidence, Rosser can make no showing that he was unfairly prejudiced by Jacobs' testimony, even though it was excluded by the trial court. See *Akhimie v. State*, 297 Ga. 801, 807 (3) (777 SE2d 683) (2015) (no showing of harm where testimony in question was cumulative of other admissible evidence). In light of the foregoing, we conclude that the trial court did not abuse its discretion by denying Rosser's motion for mistrial.

3. Rosser argues that the trial court erred by admitting certain statements he made while in police custody because such statements were given with the hope of benefit. We disagree.

Two days after a warrant was issued for his arrest, Rosser turned himself in to law enforcement and gave a custodial statement to Detective Coleman about Vereen's death which was audio-recorded. Rosser initially blamed Jackson for Vereen's death. After Detective Coleman challenged this version of the events, Rosser said he did not remember much about what happened on the night of the incident due to his consumption of alcohol.

Detective Coleman then told Rosser that he had a video recording of the events that took place outside the Days Inn. Coleman refused to show the video to Rosser, and the two had the following exchange:

> COLEMAN: I ain't going to show it to you . . . because . . . what you have to understand is, is that there's a reason why there's a murder warrant out for you. It ain't because we just threw the dice. I knew [you and Jackson] were together that night, you know what I'm saying? You have a specific reason why, all right? So what I'm saying is, is that, you know, lying to me [isn't going] to make this any better; it's [going to] make it look worse. It's [going to]

make it look like you did this s*** on purpose, all right? What you've got to do is come — come give it up, come up off of what happened that night. If you don't remember part because you was drunk, fine.

ROSSER: I don't remember.

COLEMAN: But please don't put it on your boy, all right? Just because he's got a murder rap, you know? You've got to come up off of it; that's the only way that the — the court is going to have any mercy for you at all, because if you go down — go down into this place — once you leave here, your story is locked in, you know what I'm saying? And when we start presenting all this evidence, it's going to make it a little worse. So, why don't you start over and tell me what happened from what you remember?

The interview continued, and Rosser later asked Coleman to erase the recording of the interview so that he could tell Coleman "the whole thing." Coleman declined, and Rosser told Coleman that he chased Vereen out of the hotel room and that they were arguing in the parking lot. Rosser then apologized to Detective Coleman for lying earlier in the interview.

Rosser moved in limine to suppress the statements made in the custodial interview, arguing that Detective Coleman's statement about "mercy" gave a hope of benefit if Rosser confessed to Vereen's

murder. At a *Jackson-Denno* hearing,[6] Detective Coleman testified, and the audio recording of his interview of Rosser was played. The State argued that Coleman's statement to Rosser about the court having "mercy" on him was a permissible interrogation tactic, as it was merely an admonishment to tell the truth. The trial court agreed, ruling that Rosser's statements to Coleman, including those offered after Coleman's statement about "mercy," had not been induced by the hope of benefit and were otherwise admissible. Rosser now appeals that ruling.

OCGA § 24-8-824 provides, in relevant part, that "[t]o make a confession admissible, it shall have been made . . . without being induced by another by the slightest hope of benefit[.]" This Court has consistently interpreted the phrase "slightest hope of benefit" not in the colloquial sense, "but as it is understood in the context within the statute, focusing on promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." (Citations and punctuation omitted.) *Price v. State*, 305 Ga. 608,

---

[6] See *Jackson v. Denno,* 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

610 (2) (825 SE2d 178) (2019).

Because the relevant facts here arise solely from Rosser's audio-recorded interview with Detective Coleman and are not in dispute, we review Rosser's challenge to the admission of his custodial statement de novo. *Price*, 305 Ga. at 611 (2). Here, the record shows that before speaking with Detective Coleman, Rosser was given *Miranda* warnings. During the course of the interview, Detective Coleman began to press Rosser as to the truthfulness of his accounts and encouraged him to tell the truth. Specifically, Coleman said, "[L]ying to me [isn't going] to make this any better; it's [going to] make it look worse. It's [going to] make it look like you did this s*** on purpose, all right?" As we have previously held, this type of exhortation to tell the truth is not improper. See *Stinski v. State*, 281 Ga. 783, 784 (2) (a) (642 SE2d 1) (2007) (noting that "(i)t is not improper for the police to encourage a suspect to help herself by telling the truth") (citation and punctuation omitted).

After Rosser told Coleman that he could not remember what happened, Coleman implored Rosser not to blame Jackson for

Vereen's death and went on to say, "You've got to come up off of it; that's the only way that the — the court is going to have any mercy for you at all, because if you go down — go down into this place — once you leave here, your story is locked in, you know what I'm saying?" As with Coleman's earlier statement to Rosser, this was not an improper interrogation tactic. Detective Coleman never told Rosser that he would not be charged with murder, that he would be charged with a lesser crime, or that he would receive a shorter sentence if he told him what happened. See *Shepard v. State*, 300 Ga. 167, 169 (2) (794 SE2d 121) (2016). Moreover, as we discussed in *Price*, "it is permissible for the police to tell a suspect that the trial judge may consider his truthful cooperation with the police." (Citation and punctuation omitted.) 305 Ga. at 611 (2). We consider Coleman's reference to the court having "mercy" on Rosser to be such a statement, and that type of exhortation by a law enforcement officer does not render a confession inadmissible under OCGA § 24-8-824 . This enumeration of error therefore fails.

4. Finally, Rosser argues that his trial counsel provided

ineffective assistance by failing to renew pre-trial objections to the admission of testimony regarding the August 27, 2010 incident between Rosser and Vereen. He specifically claims that his trial counsel was ineffective for not objecting to the testimony of Vereen's stepfather and the police officer who responded to the incident.

> To prevail on this claim, Rosser
>
> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [Rosser] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [Rosser] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citations and punctuation omitted.) *Stuckey v. State*, 301 Ga. 767, 771 (2) (804 SE2d 76) (2017) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). "A strong presumption exists that counsel's conduct falls within the broad range of professional conduct." (Citation and punctuation omitted.) *Ford v. State*, 298 Ga. 560, 566 (8) (783 SE2d 906) (2016).

Here, as discussed above, Rosser's counsel moved in limine to exclude hearsay testimony offered by Jacobs and by Vereen's mother regarding the August 2010 incident between Rosser and Vereen at Rosser's parents' house. Rosser's trial counsel later moved in limine to exclude all evidence relating to the incident. The trial court denied those motions but indicated to Rosser that it would reconsider its rulings if objections were renewed when testimony regarding the August 2010 incident was offered at trial.

Both Vereen's stepfather and the responding police officer testified at trial about the incident. Just as Vereen's stepfather began describing a phone call he received from Vereen regarding the incident, Rosser's trial counsel objected on hearsay grounds. The trial court sustained that objection, and the prosecutor then assured the court that she would direct her questioning of Vereen's stepfather away from any hearsay. The stepfather then testified that when he arrived at Rosser's parents' house, he observed that Vereen had been injured, that police were on the scene, and that Vereen's stroller and cell phone had been damaged. Rosser's trial

counsel made no objections to any of those statements by the stepfather.

Later, the officer testified that, when he responded to the call at Rosser's parents' house, he found Vereen with a bloody nose and mouth. Vereen told him that she had been "assaulted" by Rosser, a statement the officer documented in an incident report. The State then admitted photographs of Vereen's injuries and court records showing that Rosser had pled guilty to a misdemeanor battery charge arising from the incident. Rosser made no objections to the officer's testimony or the admission of the photographs or court records.

As to the testimony of Vereen's stepfather, Rosser has offered no basis on which the testimony given after the objection was sustained could have been excluded through further objection by trial counsel. He has thus failed to demonstrate how his counsel performed deficiently with respect to the testimony of that witness or how he was harmed by the failure to make additional objections to his testimony.

As to the officer, Rosser's trial counsel made no objection to any of the testimony he offered, including when he testified that Vereen told him that Rosser had "assaulted" her. Even though the trial court might have sustained an objection to the statement Vereen made to the officer on hearsay grounds, as noted above, other admissible evidence established the source and extent of Vereen's injuries. Specifically, the State admitted photographs, the stepfather's testimony, and other testimony by the officer regarding Vereen's injuries and self-authenticating court records showing that Rosser pled guilty to misdemeanor battery based on this incident. Given the cumulative nature of this evidence, the failure to object to the officer's testimony about what Vereen told him does not amount to deficient performance. See *Koonce v. State*, 305 Ga. 671, 676 (2) (d) (827 SE2d 633) (2019) (no deficient performance for failure to make hearsay objection where testimony at issue was cumulative of other evidence presented at trial).

*Judgment affirmed. All the Justices concur.*

Decided May 4, 2020.

Murder. Fulton Superior Court. Before Judge Russell.

*Stanley W. Schoolcraft III*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.