NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 1, 2022

S22A0406. GUDE v. THE STATE.

BETHEL, Justice.

A Fulton County jury found Marquayvian Gude guilty of malice murder and other offenses in connection with the shooting death of Devontavious McClain. Following the denial of his motion for new trial, Gude appeals, contending that the evidence presented at trial was insufficient to support his convictions and that the trial court abused its discretion by admitting an "in-life" photograph of McClain during the testimony of McClain's mother and denying his motion for mistrial regarding the same, permitting the State to elicit hearsay testimony from McClain's sister, and overruling his objection to an officer's testimony and giving an insufficient curative instruction. Gude also argues that the trial court erred when it ruled he had not timely moved for immunity from prosecution under

OCGA § 16-3-24.2 or established his justification defense by a preponderance of the evidence. We affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On April 21, 2013, McClain's mother, Laura McClain, reported to the police that McClain, who lived in Griffin, was missing. She described the car he was driving as a silver 2004 Chevrolet Impala LS. Initial efforts by the police to locate McClain were unsuccessful.

On June 14, 2013, while responding to an unrelated matter by helicopter, a pilot for the Atlanta Police Department saw a vehicle

[1] The crimes occurred on April 20, 2013. On October 4, 2013, a Fulton County grand jury indicted Gude for malice murder (Count 1), two counts of felony murder (Counts 2 and 3), armed robbery (Count 4), aggravated assault with a deadly weapon (Count 5), and possession of a firearm during the commission of a felony (Count 6), each arising from the shooting death of McClain. At a jury trial held from August 4 to 11, 2015, Gude was found guilty on all counts. The trial court sentenced him to serve life in prison on Count 1, a concurrent term of 20 years on Count 4, and a suspended term of five years on Count 6, to run consecutively to the sentence on Count 1. The remaining counts were either merged or vacated by operation of law. Gude filed a timely motion for new trial through trial counsel, which he amended through new counsel on December 17, 2018. Following a hearing, the trial court denied Gude's motion, as amended, on May 21, 2019. Gude filed a timely notice of appeal, and his case was docketed to this Court's term commencing in December 2021 and submitted for a decision on the briefs.

2

"tucked away" behind an abandoned apartment complex in northwest Fulton County. The pilot testified that, from the air, the vehicle "looked out of place" because it was "shiny" and "clean" and had not been "stripped" whereas the apartment was abandoned and had overgrown weeds.

When another police officer arrived at the location, he discovered an abandoned, silver Chevrolet Impala behind the apartment complex where it was not visible from the road. The vehicle's windows were down, pools of rainwater were found inside the vehicle, and there were flies and a smell of "something decomposing" surrounding the car. Other officers responded to the scene. One of them noted the "unmistakable smell of rotting flesh." When the officers opened the trunk of the vehicle, they discovered a blanket covering a "badly decomposed body," infested with maggots and flies.

The license plate number of the vehicle was linked to McClain, and the vehicle's make, model, and color matched the description given by McClain's mother. While processing the vehicle, the police

discovered cleaning supplies in the backseat of the car and a roll of black duct tape on the floorboard of the front passenger's side of the vehicle.

The body was later identified as McClain. The medical examiner who performed the autopsy on McClain determined that the cause of death was a gunshot wound to the head and that the manner of death was homicide.

McClain's cell phone records showed that, on April 20 and 21, 2013, he drove from Griffin to Atlanta on I-75, ultimately arriving at Center Hill Park in Atlanta. Gude's cell phone records showed a text message conversation between him and McClain during this time. The conversation indicated that McClain was on his way to meet with Gude, whom he had met through an online dating application. Through that dating application, McClain pretended to be a woman named "Beautiful Nicole" to meet other men.

Based on information obtained by Gude's cell phone service provider, the police obtained his address, which was an apartment in a complex on Hollywood Road in northwest Atlanta. The complex

4

is located less than a quarter of a mile from the apartment complex where the abandoned vehicle was discovered, and less than half a mile from Center Hill Park, the last place McClain's phone was detected. On July 4, 2013, the police executed a search warrant at Gude's residence and found a roll of black duct tape that was "very similar" to the one found in McClain's car.

Damien Gude (Gude's father) and Santrice Washington (Damien's former girlfriend) both lived at the apartment with Gude in 2013. They both saw Gude driving McClain's car and recalled that the car had been parked at the apartment complex where they lived throughout the last week of April 2013, which was around the time McClain was reported missing. Sometime later, they both smelled a strong, foul odor coming from the trunk of the car.

Washington testified that she thought the smell was coming from "a dead body." When she asked Gude about the smell, he told her that it was from mildew that had formed after water got into the backseat of the car. Washington added that she had seen Gude in possession of a black handgun. She also told the police that she had

5

two rolls of black duct tape, but that one of the rolls was missing.

At trial, Damien testified that he had also seen Gude with a black gun. Gude did not have a car of his own, and when Damien and Washington asked him where he got it, Gude told them that it belonged to his girlfriend. Damien also testified that when he asked Gude about the smell coming from the car, Gude "didn't really have" a response. The day after Damien asked Gude about the smell, the car was gone, and Damien never saw it again. Damien testified that Gude had never told him that Gude killed someone or asked him to help Gude get rid of a body and that he had never helped Gude do that.

Gude was arrested and, after receiving *Miranda* warnings,[2] agreed to be interviewed by the police. During the interview, Gude told the police that he met a person online whom he believed to be a woman and arranged to meet her in Atlanta. When he got into McClain's car in Center Hill Park, he realized that the person was a

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

male. He told McClain that he was not gay and was not interested in having sex with him. McClain then drove Gude to a gas station in Griffin, at which point McClain attempted to get Gude to exit the vehicle. Gude protested and asked to be driven home. According to Gude, at some point, either on the ride back or when they arrived at Center Hill Park, McClain became "sexually aggressive" towards Gude, grabbing him and trying to choke him. Gude told the officer that he was afraid and that he shot McClain, ran away, and disposed of the gun in the woods in Center Hill Park. Gude also admitted that he later attempted to use McClain's debit card at a nearby Family Dollar store.

McClain's bank records showed that his debit card was used once on the afternoon of April 21, at a store called Stop & Shop at West End, and again on April 23, 2013, at a Family Dollar store in Atlanta. Both transactions were declined due to lack of funds in McClain's account.

At trial, Gude testified as follows. He met McClain at Center Hill Park, brought his handgun to the encounter, and, upon

7

returning to Center Hill Park after McClain drove him to Griffin, shot McClain after McClain attempted to grab his "crotch" twice and then his neck. He told his sister and Damien about the shooting that night, and Damien offered to help him "get rid of the evidence." Damien got a tarp and a roll of black duct tape, and Gude and Damien went back to where McClain's car was parked at Center Hill Park. Gude and Damien put the body in the trunk of McClain's car and placed the tarp over the body. Gude and Damien then drove to the abandoned apartment complex (with Damien driving McClain's car and Gude driving Damien's truck). Together, they took McClain's body out of the trunk of McClain's car and placed him in the bushes at the abandoned apartment complex. Gude took McClain's wallet and Damien took McClain's cell phone from the front console of McClain's car before the two drove back to the Hollywood Road apartment in Damien's truck.

Gude argues that the evidence presented at trial was insufficient to support his convictions for malice murder, armed robbery, and possession of a firearm during the commission of a

8

felony because not all reasonable explanations aside from his guilt were disproven by the State. Although Gude does not cite OCGA § 24-14-6 in his brief, he specifically argues that the evidence presented at trial did not exclude the reasonable hypothesis that Gude defended himself after being "catfished,"[3] sexually attacked, and falsely imprisoned in McClain's car. We disagree.

When evaluating the sufficiency of evidence as a matter of constitutional due process, we must determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). In making that determination, "we view the evidence in the light most favorable to the verdict, and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the [jury]." *Wilkerson v. State*, 307 Ga. 574, 574 (837 SE2d 300) (2019). "As long as there is some

---

[3] Webster's Dictionary defines "catfishing" as "to deceive (someone) by creating a false personal profile online." *Catfishing*, Merriam-Webster.com Dictionary (2022).

9

competent evidence, even if contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Scott v. State*, 309 Ga. 764, 766 (1) (848 SE2d 448) (2020).

Moreover, if there is any direct evidence presented by the State, the circumstantial-evidence statute does not apply to a sufficiency analysis. See OCGA § 24-14-6; see also *Jackson v. State*, 310 Ga. 224, 228 (2) (b) (850 SE2d 131) (2020).

Here, the evidence showed that McClain died from a gunshot wound. Gude admitted that he met McClain, that he was in McClain's car with him, and that he shot him. Gude also testified that his father found McClain's phone and he found McClain's wallet, both located in the car's console, when he and his father returned to the car later after he shot McClain. Gude testified that he took McClain's wallet and his father took the phone, and bank records later showed that McClain's debit card was used twice, once on April 21 and again on April 23. Gude claimed that the shooting was an act of self-defense based on McClain's allegedly aggressive

and unwelcome sexual advances toward him, but the jury was entitled to reject Gude's self-serving version of the events. See *Gobert v. State*, 311 Ga. 305, 309-310 (1) (a) (857 SE2d 647) (2021) (evidence was sufficient to support aggravated assault and felony murder predicated on aggravated assault and jury was authorized to reject defendant's self-defense theory); *Ferguson v. State*, 297 Ga. 342, 344 (1) (773 SE2d 749) (2015) (jury was authorized to disbelieve defendant's self-defense theory). In addition, Gude's own version of events in his trial testimony, specifically the efforts he claimed he and his father took to conceal the shooting and abandon McClain's body, were contradicted both by evidence that McClain's body was still in the trunk of his car (rather than in bushes at the abandoned complex) and testimony given by Damien and Washington about Gude's actions in the days following the shooting. See *Davenport v. State*, 311 Ga. 667, 669-670 (1) (859 SE2d 52) (2021) (holding evidence was sufficient to support malice murder and other convictions in case where appellant admitted to another that he shot the victim, witnesses saw appellant drive around the victim's house

prior to the shooting, and appellant testified that he shot the victim as a result of a "botched" drug deal, and jury was authorized to disbelieve appellant's self-defense theory); *Ivey v. State*, 305 Ga. 156, 157-158 (1) (824 SE2d 242) (2019) (evidence was sufficient to support appellant's convictions for felony murder and possession of a firearm during the commission of a felony where appellant admitted he shot the victim but contended that he acted in self-defense after victim charged at him).

Thus, viewed in the light most favorable to the verdicts, the evidence presented at trial supports the jury's guilty verdicts on the counts of malice murder, armed robbery, and possession of a firearm during the commission of a felony. In addition, despite Gude's contention to the contrary, the evidence against him was not wholly circumstantial, as the evidence included Gude's own statements and testimony about the events before and after the shooting – including his admission that he took the wallet. Thus, when viewed as a whole, the evidence presented at trial was sufficient to support Gude's convictions as a matter of due process and under OCGA § 24-14-6.

2. Gude next argues that the trial court erred when it admitted, over Gude's objection, an "in-life" photograph of McClain through the testimony of McClain's mother. Gude claims the trial court also erred by denying Gude's motion for mistrial regarding the admission of the photograph. We disagree with these contentions.

(a) During the State's direct examination of McClain's mother, the State asked whether she was able to bury her son. She replied that she was unable to get his body back because it was "decomposed" and "nothing but ashes." Gude's counsel asked to approach the bench and then objected to the State asking McClain's mother to identify him in a photograph. The trial court overruled the objection. The State then asked if she recognized an in-life photo of McClain, to which she responded, "That is my son," and stated that it was a fair and accurate depiction of McClain based on the last time she saw him.

After this exchange, the jury was excused, and Gude's counsel explained his objection to the admission of the in-life photo of McClain on the record, stating the photo was "unnecessarily

13

prejudicial, inflammatory, likely to elicit an emotional response from his mother, and not relevant to any issues in the case." Gude's counsel then noted that an emotional response was elicited from McClain's mother in response to seeing the in-life photo, and the trial court agreed she had an emotional response. The State responded that McClain's mother was crying throughout her testimony and that her testimony was needed because she was the last person to see McClain before he disappeared. Following this exchange, the trial court again overruled Gude's objection to the introduction of the photograph and denied Gude's request for a mistrial.[4]

(b) On appeal, Gude again argues that the photograph was not relevant to the issues in the case and was substantially more prejudicial than probative. As we have explained before,

> [p]ursuant to OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible[.]" To evaluate relevancy, this Court relies on OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the

---

[4] The record also shows that McClain's sister, Shaniki McClain, identified the same photograph shown to McClain's mother as a photograph of McClain during her direct examination by the State.

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded under OCGA § 24-4-403 ["Rule 403'] "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

(Citations and punctuation omitted.) *Ragan v. State*, 299 Ga. 828, 832 (3) (792 SE2d 342) (2016). "Moreover, the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." (Citation and punctuation omitted.) *Pike v. State*, 302 Ga. 795, 799 (3) (809 SE2d 756) (2018).

In *Walker v. State*, 312 Ga. 232 (862 SE2d 285) (2021), the trial court admitted into evidence an in-life photo of a murder victim, in which he was wearing a graduation cap and holding a diploma. There, we explained that

[w]e have held generally that, in a murder case, "a photograph of a victim in life may be relevant to prove an element of the corpus delicti, that is, that the person alleged to have been killed is actually dead." *Ragan v.*

15

*State*, 299 Ga. 828, 832 (3) (792 SE2d 342) (2016) (citation and punctuation omitted). We have also noted, however, that "certain steps must be taken to ensure that the tenuous probative value of a victim-while-in-life photograph is not subsumed by [its] substantial prejudicial impact." Id. In this regard, we have encouraged the State to use photographs depicting the victim alone and to proffer them through witnesses other than the victim's relatives. See *Lofton v. State*, 309 Ga. 349, 355 (2) (b) (846 SE2d 57) (2020).

312 Ga. at 238 (3).

Here, the photograph depicted McClain standing alone against a neutral background. In its order denying Gude's motion for new trial, the trial court found that although his mother was emotional when she identified McClain in the in-life photo, she showed similar emotion during other points in her testimony. Although the probative value of this photograph and the related testimony may have been minimal, especially as there were no after-death photos of the victim due to the decomposition of his remains, because the State introduced only a single photograph of McClain alone and his mother's testimony regarding that photograph was brief and met with the same amount of emotion she portrayed elsewhere in her

16

testimony, we cannot say that the trial court abused its discretion in concluding that the danger of unfair prejudice in this circumstance did not substantially outweigh the probative value. See *Walker*, 312 Ga. at 238 (3); *Lofton*, 309 Ga. at 356 (2). Compare *Ragan*, 299 Ga. at 832-833 (3) (concluding that, where the State admitted *five* in-life photos of the murder victim, some showing her with her children, through her husband, any probative value was outweighed by the cumulative prejudicial effect). Accordingly, this enumeration of error fails.

3. Gude also contends that the trial court abused its discretion when it denied his motion for mistrial regarding McClain's mother's "grief and emotion" during her testimony. As an initial matter, we have held that when "[t]he record does not contain any evidence that [the witness] became hysterical or made any prejudicial comments . . . , the trial court did not abuse its discretion by denying the motion for mistrial." (Citations and punctuation omitted.) *Williams v. State*, 276 Ga. 384, 385 (2) (578 SE2d 858) (2003); see also *Ragan*, 299 Ga. at 834 (3) ("Trial courts are vested with great discretion to grant or

17

deny mistrials because they are in the best possible position to determine whether one is warranted[.]"). However, we do not reach the merits of this enumeration because a "motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion." (Citation omitted.) *Ragan*, 299 Ga. at 833 (3). Here, Gude's complaint is directed at the emotion displayed by McClain's mother during her direct examination, but Gude did not move for a mistrial until after he completed his cross-examination of the witness. Because counsel did not make a contemporaneous objection linked to the emotional expression he complains of, this issue is not properly preserved for review. See *Burrell v. State*, 301 Ga. 21, 26 (5) (799 SE2d 181) (2017).

4. Gude next alleges that the trial court abused its discretion when it permitted the State to elicit from McClain's sister, Shaniki McClain, testimony about her subjective perception that McClain "was maybe scared or upset" based on her exchange of text messages with McClain on the night he was killed. Gude argues that Shaniki's perception was based on hearsay – namely, the content of her

brother's text messages – and was inadmissible as lay opinion under OCGA § 24-7-701 (a) ("Rule 701 (a)"). We disagree that the trial court abused its discretion by admitting this evidence.

Shaniki testified that she and McClain lived together, were "very close," and confided in each other. Specifically, McClain had confided in Shaniki in 2012 that he was gay, and Shaniki testified that she and McLain would "talk to each other about secrets and life." During the State's direct examination of Shaniki, the following exchange took place regarding communications she had with McClain after 1:00 a.m. on the night he was killed:

> STATE: What could you tell from the text messages?
> WITNESS: He told me that he was –
> DEFENSE COUNSEL: Objection, Your Honor; hearsay.
> THE STATE: Not what he said, but what could you gather from reading it?
> DEFENSE COUNSEL: Object. It's leading, still hearsay.
> THE COURT: Well, she can testify as to what –
> THE STATE: Her perception was.
> THE COURT: -- her perception was of his state of mind from the text messages.
> DEFENSE COUNSEL: Your Honor, she can't testify to another person's state of mind if she's basing it on what someone else told her.
> THE COURT: See if you can clean it up, please.
> THE STATE: I'm not asking about his state of mind. I'm

19

asking about her perception.

DEFENSE COUNSEL: Well, she is asking her perception of his state of mind is what she's asking.

THE COURT: All right. Let's move on.

THE STATE: How did you interpret his text messages?

DEFENSE COUNSEL: Objection, Your Honor. It is the same question.

THE COURT: I will allow that question.

THE WITNESS: That he was maybe scared or upset.

DEFENSE COUNSEL: Objection, Your Honor.

THE COURT: Overruled. Let's move on.

Shaniki testified that she called McClain after they exchanged a series of text messages, and they spoke on the phone. Later that night, she tried calling him again, but the call went to his voicemail, which Shaniki said was not "normal" because he always kept his phone charged. When she did not reach McClain again, Shaniki called their mother and learned that McClain was not home.

We begin our analysis by noting that the text messages between Shaniki and McClain were not admitted in evidence. Neither did Shaniki recount the contents of the text messages in her testimony. Accordingly, Shaniki's testimony about her impressions she had as a result of the text exchange was not hearsay.

Continuing our analysis, we note that Rule 701 (a) allows a lay

witness to testify in the form of an opinion or inference if the testimony is "rationally based on the perception of the witness, helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge." *Glenn v. State*, 302 Ga. 276, 279-80 (II) (806 SE2d 564) (2017). Whether to allow lay opinion testimony under Rule 701 (a) is a matter for the trial court's discretion, and the appellate court will review only for abuse of discretion. See *Bullard v. State*, 307 Ga. 482, 491 (4) (837 SE2d 348) (2019).

In this case, Shaniki's testimony concerned her own belief that McClain was "maybe scared or upset," which she perceived from her text message conversation with him in light of her close personal relationship with him. The complete extent of the complained of testimony was that she perceived McClain to be "maybe scared or upset." We see no error in the trial court's determination to admit

this testimony.[5] See *United States v. Gilbertson*, 970 F3d 939, 952 (8th Cir. 2020) (holding that trial court did not abuse its discretion by admitting, under Federal Rule of Evidence 701 (a), witness's testimony explaining his reaction to and interpretation of text messages from defendant); see also *Glenn v. State*, 302 Ga. 276, 280 (II) (806 SE2d 564) (2017) ("[OCGA § 24-7-701 (a)] is modeled on Federal Rule of Evidence 701 (a), and when we consider the meaning of such provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules[.]") (citation and punctuation omitted).

5. Gude next contends that the trial court abused its discretion when it overruled his objection to testimony in which an officer stated his opinion about statements Gude made in an interview. Gude also contends that the curative instruction was insufficient to

[5] Gude's objection to this evidence at trial was based solely on the claim that it called for hearsay. He did not raise an objection at trial based on Rule 701 (a). Therefore, this claim was not preserved for ordinary appellate review. However, as we have demonstrated, the trial court did not commit error, plain or otherwise, with respect to admitting the testimony. Thus, a separate review of the evidence is not necessary.

22

cure the prejudice to him from the officer's testimony. We disagree

that the trial court abused its discretion.

During the State's direct examination of Detective Kevin Otts,

the following exchange occurred:

THE STATE: In your experience as a homicide detective, is it unlikely for suspects to give partial truths?
THE WITNESS: Is it likely?
THE STATE: Do they sometimes give only partial truths?
THE WITNESS: Yes.
THE STATE: Do they always give you the complete story?
THE WITNESS: No.
THE STATE: So it's not unlikely that Mr. Gude never admits –
DEFENSE COUNSEL: Objection, Your Honor. That's calling for him to opine about the ultimate issue in this case.
THE COURT: Let's ask the question first.
THE STATE: When he doesn't tell you about the body being in the trunk or him putting the body in the trunk, was that unusual?
THE WITNESS: No. For me that's not unusual at all because I think that's tougher to admit to than killing –
DEFENSE COUNSEL: Objection, Your Honor, calls for speculation.
THE COURT: Overruled.
THE WITNESS: -- that's tougher to admit to than killing him. That is cold, to throw somebody in their own car and to drive –
DEFENSE COUNSEL: Objection, Your Honor.
THE COURT: All right. All right. All right.
DEFENSE COUNSEL: Where are we going?

23

THE WITNESS: All right.

THE COURT: Sustained. Stricken. The jury will disregard. Let's move on.

"[J]uries are presumed to follow curative instructions in the absence of proof to the contrary." (Citation omitted.) *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019). Moreover, "[a] new trial will not be granted unless it is clear that the trial court[']s curative instruction failed to eliminate the effect of the prejudicial comment." (Citation and punctuation omitted.) *Rosser v. State*, 308 Ga. 597, 603 (2) (842 SE2d 821) (2020).

Here, although the trial court initially allowed the witness to offer some limited testimony related to whether suspects give partial truths and admit to killing individuals, the court sustained what was Gude's third objection on these grounds to Detective Otts's testimony after he testified "that is cold, to throw somebody in their own car and to drive," and immediately issued a curative instruction directing the jury to disregard that statement. See *Lynn v. State*, 310 Ga. 608, 612 (3) (852 SE2d 843) (2020) ("The trial court's prompt curative instruction negated any prejudice by telling the jury to

disregard the reference, an instruction that we presume the jury followed.") Gude argues that the quality and adequacy of the trial court's instruction were insufficient. Here, within the context of the examination of Detective Otts and the record as a whole, we cannot say that it is "clear that the trial court[']s curative instruction failed to eliminate the effect of the prejudicial comment." *Rosser*, 308 Ga. at 603. Thus, we cannot say that the curative instruction constituted an abuse of discretion. Accordingly, this contention also fails.

6. Gude next contends that the trial court erred when it determined that he had not timely moved for immunity from prosecution pursuant to OCGA § 16-3-24.2, as he first made his request via an oral motion near the end of his trial. Gude also contends that the trial court erred in its determination that he had not met his burden of showing that he reasonably believed deadly force was necessary such that he should be immune from prosecution as provided in OCGA § 16-3-24.2.

OCGA § 16-3-24.2 provides, in relevant part, that "[a] person who uses threats or force in accordance with Code Section 16-3-21

25

. . . shall be immune from criminal prosecution therefor," subject to an exception not relevant here. OCGA § 16-3-21 (a) provides, in relevant part:

> A person is justified in . . . using force against another when and to the extent that he or she reasonably believes that such . . . force is necessary to defend himself . . . against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23,[6] a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself . . . or to prevent the commission of a forcible felony.

Finally,

> [a] person who uses threats or force in accordance with Code Section 16-3-21 . . . has no duty to retreat and has the right to stand his or her ground and use force as provided in said Code section[], including deadly force.

OCGA § 16-3-23.1.

With regard to the timing of Gude's motion, as we have previously discussed,

---

[6] We note that this exception is not relevant to the case before us, as OCGA § 16-3-23 provides for the use of force against another "when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation."

> [a]lthough nothing in the language of OCGA § 16-3-24.2 requires an immunity motion to be filed pretrial, such motions are generally made before trial because a grant of immunity terminates a criminal prosecution. And we have held that a trial court errs when it refuses to consider before trial an immunity motion that was filed before trial.

*State v. Remy*, 308 Ga. 296, 297 (2) (840 SE2d 385) (2020). However, despite the unusual timing of his motion for immunity, we need not determine today whether such motion was timely because even assuming the motion was timely, Gude has failed to demonstrate that the trial court erred by denying it on the merits.

"A defendant bears the burden of showing that he is entitled to immunity under OCGA § 16-3-24.2 by a preponderance of the evidence." *Bunn v. State*, 284 Ga. 410, 413 (3) (667 SE2d 605) (2008). "In reviewing the denial of a motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." (Citations omitted.) *Sifuentes v. State*, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013).

In order to justify the use of "force which is intended or likely to cause death or great bodily harm" against McClain (which Gude clearly used in this case) and thus to show that he was entitled to immunity under OCGA § 16-3-24.2, Gude had to show by a preponderance of the evidence that, at the time of the shooting, he "reasonably believe[d] that such force [was] necessary to prevent death or great bodily injury to himself . . . or to prevent the commission of a forcible felony." To reach a proper conclusion on this issue, the trial court must consider the actions taken by McClain as well as the means used by Gude to defend himself against McClain's advances. See *Copeland v. State*, 310 Ga. 345, 357 (2) (c) (iv) (850 SE2d 736) (2020).

Here, the trial court's order denying Gude's motion for new trial did not include any discussion about why it determined that Gude had not carried his burden of showing that he reasonably believed deadly force was necessary, and the denial of the motion at trial was a summary denial. Accordingly, viewing the evidence most favorably to the trial court's ruling, see *Sifuentes*, 293 Ga. at 444 (2),

28

the clearest explanation for the trial court's denial of Gude's motion is that the court simply did not believe his version of events, as described in his statements to the police and his trial testimony, which were summarized in Division 1 above. As we have said, "the trial court was authorized not only to reject [Gude's] self-serving testimony but also to conclude that he had not met his burden to prove justification so as to entitle him to immunity." *Ellison v. State*, 313 Ga. 107, 111 (868 SE2d 189) (2022). Thus, we cannot say that the trial court erred in denying Gude's motion for immunity under OCGA § 16-3-24.2.

*Judgment affirmed. All the Justices concur.*